| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | JS-6 |

### CIVIL MINUTES -- GENERAL

| | | |
|---|---|---|
| Case No. | **CV 24-1394-JFW(ASx)** | Date: May 17, 2024 |

Title:     Tamara Yagy -v- Tetra Tech, Inc., et al.

**PRESENT:**

   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| Courtroom Deputy | Court Reporter |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (In Chambers):  ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION [filed 4/5/2024; Docket No. 21];**

**ORDER DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS IN THE ALTERNATIVE TO MOTION TO COMPEL ARBITRATION [filed 4/5/2024; Docket No. 22]**

On April 5, 2024, Defendant Tetra Tech, Inc. ("Tetra Tech" or "Defendant") filed a Motion to Compel Arbitration.  On April 29, 2024, Plaintiff Tamara Yagy ("Plaintiff") filed her Partial Opposition.  On May 6, 2024, Defendant filed a Reply.  On May 7, 2024, Plaintiff filed a Notice of Supplemental Authority.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that this matter is appropriate for decision without oral argument.  The hearing calendared for May 20, 2024 is hereby vacated and the matter taken off calendar. After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is a former Tetra Tech employee and former participant in the Tetra Tech, Inc. and Subsidiaries Retirement Plan (the "Plan"), a defined contribution employee pension benefit plan under the Employee Retirement Security Act ("ERISA").  Compl. ¶¶ 4, 7.  In her Class Action Complaint filed on February 21, 2024, Plaintiff alleges that Plan fiduciaries violated ERISA in managing the Plan's assets because the Plan allocated forfeited funds (i.e., Tetra Tech's contributions to the Plan accounts of participants who terminate their employment with Tetra Tech before those contributions are vested) to reduce Tetra Tech's future contributions to the Plan instead of applying them to Plan expenses. *Id.* at ¶¶ 30-31, 38, 44, 49, 54.  Plaintiff alleges that these decisions harmed the Plan, along with its participants and beneficiaries, "by reducing [Tetra

Tech's] contributions that would have otherwise increased Plan assets and by causing participants to incur deductions from their individual accounts to cover administrative expenses that would otherwise have been covered in whole or in part by utilizing forfeited funds." *Id.* at ¶ 22.

Plaintiff alleges, on behalf of herself and as proposed representative of a class of participants and beneficiaries of the Plan, the following claims for relief: (1) breach of fiduciary duty of loyalty (29 U.S.C. § 1104(a)(1)(A)); (2) breach of fiduciary duty of prudence (29 U.S.C. § 1104(a)(1)(B)); (3) breach of ERISA's anti-inurement provision (29 U.S.C. § 1103(c)(1)); and (4) prohibited transactions (29 U.S.C. § 1106(a)(1)).  *Id.* at ¶¶ 28-56.  Pursuant to Section 502(a)(2) and (a)(3) of ERISA, Plaintiff seeks, *inter alia*, restitution of all losses to the Plan resulting from each violation of ERISA, disgorgement of all assets and profits secured by Tetra Tech resulting from these ERISA violations, and removal of the Plan's fiduciaries.  Compl., Prayer for Relief.

The Plan contains a broad arbitration provision.  That provision provides in relevant part that any "claim, dispute, or controversy of any kind asserted by a current or former participant . . . that arises out of, implicates, and/or relates to the Plan, including, without limitation," claims under Section 502(a) of ERISA,  be "referred to and finally resolved by confidential binding arbitration." Docket No. 21-2, § 8.5(a). In addition, the Plan contains a broad "Waiver of Class, Collective, and Representative Actions," providing that participants "waive[ ] the right to commence, be a party to, or be an actual or putative class member of any class, collective, or representative action arising out of or relating to the Plan" (referred to in the Plan as the "Class Action Waiver"). *Id.*, § 8.5(l)(5); *see also id.* § 8.5(l)(1).

With respect to remedies, the Plan explicitly limits the arbitrator to awarding monetary relief on an individual (not class, collective, or representative) basis. *Id.* § 8.5(l)(2). Specifically, the Plan provides that the arbitrator "shall have the authority to award monetary relief solely with respect to any alleged monetary losses in the individual Claimant's individual defined contribution account under the Plan and may not award monetary relief to or for the benefit of any other participants or beneficiaries." *Id.*  For claims brought under Sections 409 and 502(a)(2) of ERISA, the Plan provides that participants "may obtain losses to the Plan measured by the alleged monetary losses to the individual Claimant's individual defined contribution account," but participants "waive[ ], forfeit[ ], and forever relinquish[ ] the right to bring a Claim for monetary damages, losses, or injury to any individual Plan account other than the Claimant's account." *Id.* § 8.5(l)(2).  Similarly, the Plan limits the arbitrator to awarding "equitable, injunctive, and non-monetary relief" on an individual (not class, collective, or representative) basis "to the fullest extent permitted by ERISA." *Id.* § 8.5(l)(3).

Importantly, however, the Plan also provides:

> If any portion of the Arbitration provision or Class Action Waiver is found to prohibit a Claimant from obtaining any relief under ERISA that the Claimant would be able to obtain on an individual basis, the Arbitration provision and Class Action Waiver shall not be deemed void; rather, the Arbitrator(s) shall have the authority to award such relief.

*Id.* § 8.5(l)(3).  The Plan further provides:

> This Arbitration provision and Class Action Waiver shall not limit a Claimant's right, if any exists under ERISA, to seek, in the Claimant's individual capacity, relief that may be awarded under ERISA to the Claimant in the Claimant's capacity as an individual who is not bringing a class or collective action.

*Id.* § 8.5(l)(4).

Finally, as relevant here, the Plan contains a "Savings Clause" which provides in relevant part:

> For avoidance of doubt, this Section 8.5 is intended to make mandatory individual arbitration apply to the maximum extent permissible under ERISA; provided, however, that, in the event the Class Action Waiver is found to be unenforceable, then any Claim shall be filed and adjudicated in the United States District Court for the Central District of California, Western Division and not in arbitration.  If any other provision of this arbitration provision (aside from the Class Action Waiver) is found impermissible or unenforceable, the arbitration process as mandated in this Section 8.5 is still required with the minimum change necessary to allow the arbitration requirement to be permissible and/or enforceable.

*Id.* § 8.5(m).

Pursuant to the terms of the Plan, Tetra Tech moves for an order requiring Plaintiff to arbitrate each of her claims on an individual basis and staying the action pending completion of arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

## II.     LEGAL STANDARD

In 1925, Congress enacted the Federal Arbitration Act ("FAA") in response to widespread judicial hostility to arbitration.  *See American Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2308-09 (2013); *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).  Section 2 of the FAA provides in relevant part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2; *see also Herrera v. Cathay Pacific Airways Limited*, 94 F.4th 1083, 1088 (9th Cir. 2024) ("The Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts involving interstate commerce") (internal citations omitted).

This provision reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotations and citations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms."  *Id.* (internal citations omitted).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition the district court for an order compelling arbitration "in the manner provided for in such an agreement."  9 U.S.C. § 4.  In addition, a party to a lawsuit pending in federal court may request that the court stay the court proceedings pending the outcome of the arbitration proceedings. 9 U.S.C. § 3; *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1048 (9th Cir. 1996).  The Court, "upon being satisfied that the making of the agreement for arbitration . . . is not in issue . . . shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

Generally, "the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  However, certain issues are presumptively reserved for the Court.  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).  These issues include "gateway" questions of arbitrability, such as "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy."  *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011).

## III.  DISCUSSION

The parties do not dispute that the Plan contains a valid agreement to arbitrate and that the Plan's arbitration provision, by its terms, applies to Plaintiff's claims. Plaintiff expressly concedes that "Sections 8.5(a) and 8.5(l)(1) of the Plan require arbitration of the ERISA claims asserted here and preclude the claims from being brought as a class action." Docket No. 26 at 3. The parties' only dispute is the scope of relief available in arbitration.  Tetra Tech contends that the Plan document requires individual arbitration and bars Plaintiff from seeking monetary relief on behalf of other participants.  Plaintiff contends that the arbitration clause's restrictions on the statutory remedies available to her in arbitration fall within the "effective vindication exception" and cannot be enforced because they function as "a prospective waiver of a party's right to pursue statutory remedies." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236 (2013).  Plaintiff thus contends that she should be able to seek Plan-wide monetary relief in arbitration.[1]

---

[1]In essence, by seeking Plan-wide monetary relief (and monetary relief on behalf of other participants), Plaintiff seeks to pursue claims in a representative capacity on behalf of the Plan (or other participants), which is explicitly barred by the Class Action Waiver. *See* Docket No. 21-2, § 8.5(l)(5). The Class Action Waiver, however, is non-severable.  *Id.* § 8.5(m) ("[I]n the event the Class Action Waiver is found to be unenforceable, then any Claim shall be filed and adjudicated in the United States District Court for the Central District of California, Western Division and not in arbitration.").  Thus, if the Court were to decide that the effective vindication exception applies, the appropriate remedy would be to deny Defendant's Motion to Compel Arbitration, instead of allowing Plaintiff to pursue plan-wide relief in arbitration.  Indeed, the Court cannot compel arbitration on a class, collective, or representative basis without the parties' consent.  *See, e.g., Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 509 (2018).

### A. The FAA and the Effective Vindication "Exception"

The effective vindication exception to the FAA is a "judge-made exception" that "invalidate[s], on 'public policy' grounds, arbitration agreements that 'operat[e] . . . as a prospective waiver of a party's *right to pursue* statutory remedies.'" *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)) (emphasis in original). Although this doctrine has been referred to as an "exception" to the FAA, it is not truly an exception. As the Supreme Court recently emphasized, "the FAA does not require courts to enforce contractual waivers of substantive rights and remedies." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022). Indeed, "[t]he FAA requires only the enforcement of provisions to settle a controversy by arbitration, and not any provision that happens to appear in a contract that features an arbitration clause." *Id.* at 653 n.5. The Supreme Court reasoned:

> The FAA's mandate is to enforce "*arbitration agreements*." And as we have described it, an arbitration agreement is a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute. An arbitration agreement thus does not alter or abridge substantive rights; it merely changes how those rights will be processed. And so we have said that by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in arbitral forum.

*Id.* at 653. (cleaned up).

In sum, "terms in an arbitration agreement that have the effect of prospectively waiving a party's statutory remedies are not enforceable." *See Cedeno v. Session*, -- F. 4th --, 2024 WL 1895053, at *6 (2nd Cir. 2024). *See also Mitsubishi Motors*, 473 U.S. at 637 n.19 ("In the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy."). Notably, although the Supreme Court has recognized this principle in many cases, it has never applied it to invalidate an arbitration agreement under any federal statute.

Accordingly, the Court must determine whether the challenged provisions in the arbitration agreement operate as an impermissible prospective waiver of Plaintiff's substantive statutory remedies under ERISA.

### B. ERISA and the Relevant Remedies

As an initial matter, claims alleging a violation of a federal statute such as ERISA are generally arbitrable absent a "contrary congressional command." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). "As every circuit to consider the question has held, ERISA contains no congressional command against arbitration, therefore an agreement to arbitrate ERISA claims is generally enforceable." *Dorman v. Charles Schwab Corp.*, 780 Fed. Appx. 510, 513-14 (9th Cir. Aug. 20, 2019).

While an agreement to arbitrate ERISA claims is generally enforceable, the Court must still

determine whether "*this* ERISA arbitration provision is enforceable." *Smith v. Bd. of Directors of Triad Mfg., Inc.,* 13 F.4th 613, 620 (7th Cir. 2021).  The Court concludes that it is enforceable, and that the arbitration agreement does not operate as an impermissible prospective waiver of Plaintiff's substantive statutory remedies under ERISA.

Section 502(a)(2) of ERISA (29 U.S.C. § 1132(a)(2)) provides that a civil action may be brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title."  Section 409(a) of ERISA (29 U.S.C. § 1109(a)), in turn, provides:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan *any losses to the plan* resulting from each such breach, and to restore to such plan *any profits* of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. . . .

29 U.S.C. § 1109(a) (emphasis added).  Based on this statutory language (that makes a person who breaches fiduciary responsibilities liable "to make good to such plan *any* losses to the plan . . . and to restore to such plan *any* profits"), Plaintiff contends that she must be allowed to seek Plan-wide monetary relief in arbitration, despite her waiver of such relief in the arbitration agreement.  The Court disagrees.

Section 409(a) "describes consequences to the errant fiduciary, not the right of the plan participant" under § 502(a)(2). *Robertson v. Argent Tr. Co.*, 2022 WL 2967710, at *10 (D. Ariz. July 27, 2022).  And, nothing in § 502(a)(2) "suggests that an ERISA § 502(a)(2) plaintiff has an unqualified right to bring a collective action to recoup all of a fiduciary's losses and gains at once." *Id.*  Indeed, § 502(a)(2) merely authorizes a plan participant to sue a fiduciary for "appropriate relief."  In other words, while § 409(a) establishes a fiduciary duty owed to the plan, it does not follow that "appropriate relief" in all cases must include the right to pursue plan-wide monetary relief, rather than relief for a participant's own distinct harm.  Accordingly, the parties' agreement in this case -- which limits Plaintiff to obtaining only relief that is available in her individual capacity -- does not prospectively waive any of her substantive statutory remedies.

The Court's conclusion that the parties' arbitration agreement must be enforced according to its terms (and that Plaintiff may only pursue relief that would be available to her in an individual capacity) is consistent with Supreme Court precedent.  As the Supreme Court held in *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008), a participant in a defined contribution plan may sue under Sections 502(a)(2) and 409(a) to recover losses to his or her individual account, without any recovery for other accounts. *See id.* ("[A]lthough § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account."); *Cedeno v. Sasson*, -- F.4th --, 2024 WL 1895053, at *20 (2d Cir. May 1, 2024) (Menashi, J. dissenting) (citing *LaRue*).  The Court's conclusion is also in accord with the Ninth Circuit's decision in *Dorman v. Charles v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. Aug. 20, 2019) ("*Dorman II*").  In *Dorman II*, the Ninth Circuit, albeit in an unpublished opinion, concluded that

arbitration of Section 502(a) claims may proceed on an individualized basis, at least in the context of a defined contribution plan like the one at issue here.  In that case, the plan contained an arbitration provision that prohibited the plaintiff from bringing a class, collective, or representative action and mandated that any claims be brought solely on an individual basis.  *See Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1109 (9th Cir. 2019) ("*Dorman I*").  Like the Plaintiff in this case, the plaintiff in *Dorman II* argued that the effective vindication doctrine rendered the waiver of his right to pursue a representative action and seek relief on behalf of the plan unenforceable.  *See* Resp. Br. for Pl.-Appellee, *Dorman II*, No. 18-15281, 2018 WL 6791762, at *28–29, 52-54 (9th Cir. Dec. 14, 2018).  The Ninth Circuit implicitly rejected that argument, reasoning that:

> Although § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court has recognized that such claims are inherently individualized when brought in the context of a defined contribution plan like that at issue.  *LaRue* stands for the proposition that a defined contribution plan participant can bring a § 502(a)(2) claim for plan losses in her individual account. The Plan and Dorman both agreed to arbitration on an individualized basis.  This is consistent with *LaRue.*

*Dorman II*, 780 F. App'x at 514.

Plaintiff cites several out-of-circuit opinions where courts found that an arbitration provision within an ERISA benefits plan was unenforceable under the effective vindication doctrine.  *See Cedeno v. Sasson*, -- F. 4th --, 2024 WL 1895053 (2d Cir. May 1, 2024); *Harrison v. Envision Management Holding, Inc. Board of Directors*, 59 F.4th 1090 (10th Cir. 2023); *Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, 72 F.4th 499 (3d Cir. 2023); *Smith v. Bd. of Directors of Triad Mfg., Inc.*, 13 F.4th 613 (7th Cir. 2021)  The "class action waivers" in each of those cases contained problematic language that is absent from the "Class Action Waiver" here.  *See Cedeno*, 2024 WL 2895053, at *3 (arbitration provision precluded plaintiff from "seek[ing] or receiv[ing] any remedy that has the purpose or effect of providing additional benefits or monetary or other relief to any Employee, Participant, or Beneficiary other than the Claimant"); *Harrison*, 59 F.4th at 1105 (same); *Henry*, 72 F.4th at 503 (same); *Smith*, 13 F.3d at 616 (same)  Indeed, each of the waivers in those cases would have prohibited a plaintiff from obtaining *any* relief that had a plan-wide effect, including, for example, the removal of a fiduciary, even though such relief was expressly contemplated by ERISA and would have been available in his or her individual capacity.  As the Seventh Circuit stated in *Smith*:

> [T]he problem with the plan's arbitration provision is its prohibition on certain plan-wide remedies, not plan-wide representation. It is not that the plan funnels its participants away from class actions. The Court has blessed that arbitration maneuver many times . . . . Nor is individualized arbitration inherently incompatible with ERISA. Because Smith participated in a defined contribution plan, *LaRue* . . . governs, and the Court made clear in *LaRue* that § 1132(a) authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account. The bottom line is that our holding turns on the impermissible relief, and not the chosen vehicle, for ERISA claims under the plan here.

*Smith*, 13 F.4th at 622 (cleaned up); *see also Harrison*, 59 F.4th at 1109 ("It is not the [provision's] prohibition on class actions that is problematic.  Rather, it is [the provision's] prohibition of any form

of relief that would benefit anyone other than Harrison that directly conflicts with the statutory remedies available under 29 U.S.C. §§ 1109 and 1132(a)(2), (a)(3).").

In contrast to the arbitration provisions in those out-of-circuit cases,[2] the arbitration provision at issue here expressly provides that it shall not "limit a Claimant's right, if any exists under ERISA, to seek, in the Claimant's individual capacity, relief that may be awarded under ERISA to the Claimant in the Claimant's capacity as an individual who is not bringing a class or collective action." Docket No. 21-2, § 8.5(l)(4). It further provides that "[i]f any portion of the Arbitration provision or Class Action Waiver is found to prohibit a Claimant from obtaining any relief under ERISA that the Claimant would be able to obtain on an individual basis, the Arbitration provision and Class Action Waiver shall not be deemed void; rather, the Arbitrator(s) shall have the authority to award such relief." *Id.* § 8.5(l)(3). These provisions permit the arbitrator to award Plaintiff any and all relief available to Plaintiff under ERISA in her "capacity as an individual", including relief that would benefit the Plan such as removal of a fiduciary. As such, the Class Action Waiver in this case does not constitute a prospective waiver of Plaintiff's right to pursue her statutory remedies. *See Avecilla v. Live Nation Entertainment, Inc.*, 2023 WL 5354401, at *3-6 (C.D. Cal. Aug. 7, 2023) (addressing a nearly identical class action waiver, and concluding that the effective vindication doctrine did not render it unenforceable because it permits the arbitrator to award any relief that ERISA allows a plan participant to obtain on an "individual basis.").

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Compel Arbitration is **GRANTED**. This action is **STAYED** pending completion of arbitration. The Clerk is instructed to administratively close this case. Defendant's Motion to Dismiss in the Alternative to Motion to Compel Arbitration is **DENIED as moot**.

IT IS SO ORDERED.

---

[2]The Court recognizes that this decision is inconsistent with the Second Circuit's reasoning in *Cedeno*. However, in light of the Ninth Circuit's decision in *Dorman II*, the Court declines to follow the majority opinion in *Cedeno*.